IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DWAYNE CROPPER,

*Plaintiff,*

v.

No. 20-cv-921-SB

MEGAN N. McCARTHY, et. al,

*Defendants.*

---

Stephen A. Hampton, GRADY & HAMPTON, Dover, DE.

*Counsel for Plaintiff*

Allison J. McMaster, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE.

*Counsel for Defendants*

---

## MEMORANDUM OPINION

April 11, 2023

BIBAS, *Circuit Judge*, sitting by designation.

Before suing, prisoners must exhaust available administrative remedies. Because Dwayne Cropper failed to do so, I must grant summary judgment for defendants.

## I. BACKGROUND

### A. Prison guards use force to extract Cropper from his cell

Cropper is a Delaware prison inmate. In his cell, prison guards found a makeshift knife. D.I. 55-1, at A140, 142; D.I. 59, at PA168. So they decided to move him

elsewhere. D.I. 59, at PA168–69. But he refused to leave. D.I. 55-1, at A547; D.I. 59, at PA169; *see also* D.I. 50, at 2:02–2:30. To force him out, they used a pepper-ball launcher. D.I. 55-1, at A114. But rather than complying, Cropper used a blanket to shield himself and darted around his cell. D.I. 50, at 2:34–3:08. At some point, a pepper ball hit him in the eye, rupturing it. *See* D.I. 59, at PA56–57.

But still Cropper did not comply. D.I. 50, at 3:08–5:20. So prison guards entered his cell and eventually managed to restrain him. *Id.*; D.I. 55-1, at A549–50. They then took him to the infirmary. *Id.* at A114. Cropper spent an extended period in there, bedridden with his eyes shut. D.I. 59, at PA21–58.

Now Cropper sues the officials involved for excessive force and failure to train under 42 U.S.C. § 1983. D.I. 21 ¶¶ 9, 17, 22–24. He also brings various state-law claims. *Id.* ¶ 19.

### B. The prison made remedies available to Cropper

The prison automatically began investigating the use of force. *See* D.I. 55-1, at A145, A435–37. That investigation found that the guards had acted appropriately and that no follow-up was necessary. *See id.* at A145, A443–44.

The prison also had various processes to let inmates lodge complaints themselves. There was a process to seek an investigation into prison staff, a medical grievance process, and a general grievance process for other issues. D.I. 55-1, at A7 ¶ 3a, A9 § VII, A14 § X. To request an investigation of prison staff, inmates must write to the Area Supervisor or Unit Commander; they cannot use the general grievance process. *Id.* at A7 ¶ 3a, A16 (listing "Staff Investigation" as reason general grievance would be returned unprocessed). If they are unhappy with the response or get none, they can

2

appeal to the Security Superintendent and then to the Warden. *Id.* Unlike the general grievance process, which has a seven-day deadline, there is no deadline to seek a staff investigation. *Compare id., with id.* at A9 §VII.A.

## II. CROPPER FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act bars prisoners from suing under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The Act speaks of exhausting claims "with respect to prison conditions," and the Supreme Court has interpreted this requirement to apply to "all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Id.*; *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is a "threshold issue that courts must address." *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (emphasis and internal quotation marks omitted).

Failing to exhaust administrative remedies is an affirmative defense. *Id.* at 268. So defendants have the burden to prove that an inmate failed to exhaust. *Id.* "But once [defendants] ha[ve] established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Id.* Because defendants have met their burden but Cropper has not met his, I grant them summary judgment.

One note on procedure: "[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013). Although an evidentiary hearing is not required, I held one to ensure that all parties could fully present their arguments. *See Paladino v. Newsome*, 885 F.3d 203, 210–11 (3d Cir. 2018); *see also Parkell v. Lyons*, 2020 WL

5350250, at *3 (D. Del. Sept. 4, 2020) ("[A] district court may elect to resolve factual disputes regarding exhaustion without the participation of a jury, including on a summary judgment motion."). The parties also submitted more documents after the hearing. *See* D.I. 79; D.I. 80; D.I. 81. Having considered all evidence, I find that Cropper failed to show that the prison's administrative remedy was unavailable.

### A. Cropper failed to use his administrative remedy

Defendants show, and Cropper admits, that he never wrote to the Area Supervisor or Unit Commander to request an investigation into the pepper-ball incident. *See* D.I. 55-1, at A552. Seven months later, he did file a medical grievance, seeking follow-up care. *See id.* at A155. In that grievance, he said a pepper ball had hit him in the eye. *Id.* But he did not complain about the officers' use of force or their lack of training. *See id.*

And even if he had, that would not be enough. The Prison Litigation Reform Act requires "proper exhaustion," which "demands compliance with ... critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). The process for complaining about staff was separate from the process for submitting a medical grievance. *Compare* D.I. 55-1, at A7 ¶ 3a, *with id.* at A14 §X. Under the former process, writing to the Supervisor or Commander was the critical procedural rule. Because Cropper failed to comply with that rule, he did not properly exhaust the relevant administrative remedy.

### B. Cropper has not shown that the remedy was unavailable

The burden thus shifts to him to show that the administrative remedy was unavailable. *See Rinaldi*, 904 F.3d at 268. The Supreme Court has identified three situations in which an administrative remedy is unavailable: (1) when it "operates as a

4

simple dead-end," (2) when it is "so opaque" that it is "incapable of use," and (3) when prison officials "thwart" inmates from using it through "misrepresentation." *See Ross v. Blake*, 578 U.S. 632, 643–44 (2016). Cropper says all three (plus one more beyond Supreme Court precedent) apply here. But none does.

1. *There is no evidence that the process was a dead end.* Cropper says he had written the Area Supervisor or Unit Commander to request investigations in the past but they never replied. *See* D.I. 55-1, at A552. The lack of a reply, however, does not mean that the process was unavailable. All that is needed is "the possibility of some relief." *Booth v. Churner*, 532 U.S. 731, 738–39 (2001). Cropper has introduced no evidence that relief was impossible.

And the Warden's testimony confirms that submitting a request could lead to relief. If writing to the Area Supervisor or Unit Commander to request an investigation did not yield a satisfactory outcome, inmates could appeal up the chain to the Warden. When the Warden received an appeal, he would reply if he "needed additional information." *See* D.I. 55-1 at A492. Otherwise, he would have his deputies "look into [the appeals] for any further information they might find." *Id.* These appeals had (at least once in the Warden's short tenure) resulted in staff discipline. *Id.*; *see also id.* at A488–489 (explaining that he started as Warden in July 2017 and has had two other jobs since then). So Cropper has failed to carry his burden of showing that this remedy was a dead end.

True, an otherwise-available administrative remedy could be a dead end because of a parallel proceeding. *See Ross*, 578 U.S. at 645–48. And Cropper's incident

triggered an automatic use-of-force investigation. D.I. 55-1, at A145. But Cropper gives no evidence that making a request would have been futile because of this parallel proceeding. *Cf. Ross*, 578 U.S. at 645–48 (summarizing evidence that inmate could not obtain relief through normal remedial process because a "parallel" investigation was already pending).

2. *The process was not opaque.* Nor was the process for submitting a request "so opaque" that it was "incapable of use." *Id.* at 643. As mentioned, Cropper admits that he has asked for staff investigations before. *See* D.I. 55-1, at A552. So the process was usable.

To show opacity, Cropper cites several cases finding that his prison's instructions for exhausting unprocessed grievances were opaque. *See, e.g.*, *Fatir v. Phelps*, 2021 WL 827142, at *7–8 (D. Del. Mar. 4, 2021); *Abbatiello v. Metzger*, 2021 WL 678137, at *4 (D. Del. Feb. 22, 2021); *see also* D.I. 80, at 2. But those cases are irrelevant here. Cropper did not get a grievance returned unprocessed; he never submitted one in the first place. Plus, as explained, the relevant administrative process was not filing a grievance but writing the Area Supervisor or Unit Commander to request an investigation. D.I. 55-1, at A7 ¶ 3a.

3. *There is no evidence that Cropper was thwarted.* Finally, there is no evidence that prison officials thwarted him from using the administrative remedy. He says he was told that he could not submit a request from the infirmary. *See* D.I. 55-1, at A552; D.I. 83, at 4:18–21. Though I do not doubt his sincerity, I do doubt his recollection. He could not recall who told him this or when. *See* D.I. 55-1, at A552–53; D.I. 83, at

6

4:25–7:9, 8:8–15, 10:6–11:14. So it seems unlikely that any officials in the infirmary stopped him from making a request "through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644.

But even if his memory is sound, Cropper has failed to show that he was thwarted from submitting a request after leaving the infirmary. He says he thought that there was a seven-day deadline because "it says [that] on the grievance." *See* D.I. 83, at 6:21–7:14. But as explained, requests to investigate staff members do not involve a grievance. Instead, inmates must write to an Area Supervisor or Unit Commander. *See* D.I. 55-1, at A7 ¶ 3a. He had done so in the past, suggesting that he knew this was a separate process not involving a grievance. *See id.* at A552. So the general grievance form's seven-day deadline should not have confused him into thinking he had only seven days to file a written request.

Nor are the procedures for requesting a staff investigation written in such a way that "no ordinary prisoner" would know that there was no deadline for doing so. *Ross*, 578 U.S. 643–44. Those procedures are listed in a single paragraph on page three of the inmate grievance policy, under the subheading "Staff Investigation." *See* D.I. 55-1, at A7 ¶ 3a. No deadline is given. *Id.* True, later in the document, there is a seven-day deadline for general grievances. *Id.* at A9 §VII.A. But that deadline does not apply to staff investigations, which do not go through the general grievance process. It is listed under the heading "Non-Emergency Grievance Resolution Steps" and is discussed in connection with filing a "Grievance Form," which is not used for requesting a staff investigation. *Id.* And even if an inmate might assume that this seven-day

7

deadline also applied to staff investigations, "[t]he procedures need not be sufficiently 'plain' as to preclude any reasonable mistake or debate with respect to their meaning." *Ross*, 578 U.S. at 644. "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id.* So Cropper should have made a request after he left the infirmary even if he thought that it might be too late.

4. *Cropper's injury does not excuse his failure to exhaust.* Finally, beyond the three situations identified by the Supreme Court, Cropper also suggests that he could not submit a request because his eye was injured. *See* D.I. 58, at 17. The Second and Fifth Circuits have held that an administrative remedy is unavailable when it fails to accommodate those whose physical injuries prevent them from using the remedy within the allotted time. *See Rucker v. Giffen*, 997 F.3d 88, 90 (2d Cir. 2021); *Days v. Johnson*, 322 F.3d 863, 868 (5th Cir. 2003).

Yet even if the Third Circuit adopted a similar rule, it would not apply here. Cropper could have filed a request after his injury healed. Indeed, Cropper filed other grievances within four months of the pepper-ball incident. *See* D.I. 55-1, at A146. If he could file those grievances, he could also have requested an investigation. Because Cropper failed to do so, I must grant defendants' motion for summary judgment on his § 1983 claims.

### III. CROPPER'S FAILURE TO EXHAUST ALSO BARS HIS STATE-LAW CLAIMS

I also grant summary judgment for defendants on Cropper's state-law claims. Delaware likewise bars prisoners from filing a complaint "relating to a condition of

8

confinement … unless the prisoner has fully exhausted all administrative remedies available through the institutional grievance procedure." 10 Del. C. § 8804(g).

Delaware courts have applied this exhaustion requirement to complaints about isolated incidents. *See Laub v. Danberg*, 2009 WL 1152167, at *1, *4 (Del. Super. Ct. Mar. 4, 2009), *aff'd*, 979 A.2d 1111 (Del. 2009) (applying exhaustion requirement to retaliation claim against prison officials); *In re Petition of Reed*, 2004 WL 823431, at *1–2 & n.5 (Del. Ch. Feb. 2, 2004) (applying exhaustion requirement to claim that prison officials had taken an inmate's personal property during a shakedown). So Cropper needed to exhaust his administrative remedies before bringing his state-law claims too. Because he did not do so, those claims must be dismissed as well.

* * * * *

"[A] court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross*, 578 U.S. at 639. So I must grant summary judgment for defendants.